UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRAIG BOWCOCK, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-02372 |
| | § | |
| CONTINENTAL AIRLINES, INC., | § | |
| | § | |
|    *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is defendant Continental Airlines, Inc.'s motion to dismiss. Dkt. 9. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I.  Background**

Plaintiff Craig Bowcock worked for defendant Continental Airlines, Inc. as a pilot for 22 years. Dkt. 1. Pilots who fly for Continental are subject to a Collective Bargaining Agreement ("CBA") between Continental and the Airline Pilots Association ("ALPA"). The CBA contains agreements relating to, among other things, retirement benefits and dispute resolution procedures. Dkt. 9, Exh. A.

On June 24, 2008, Continental and ALPA endorsed a Letter of Agreement ("LOA") whereby pilots who were covered by the CBA, were eligible for retirement under the Continental Pilots Retirement Plan, and met certain other requirements, could take advantage of an early retirement plan called the Enhanced Retirement Window Benefit Plan 2008-4 (the "ERW"). Dkt. 9, Exh. B. Under this plan, eligible pilots who signed the ERW Election Form and Waiver and Release and retired between August 30, 2008 and November 39, 2008, were entitled to specific benefits set forth

in the LOA. Dkt. 9, Exh. B. Bowcock claims that he met the eligibility requirements for the ERW. Dkt. 1. However, at the time the ERW became available, Bowcock had an ongoing dispute with Continental regarding an alleged miscalculation of his pension. Dkt. 1. Bowcock claims that Continental "repeatedly told" him that the release he would have to sign if he were to take ERW would require that he abandon his claim relating to the alleged miscalculation of his pension. Dkt. 1. He therefore elected not to take the ERW. Dkt. 1; Dkt. 9, Exh. B. Bowcock did not retire until June 25, 2009. Dkt. 1.

Bowcock asserts that, contrary to what Continental allegedly said when he inquired about the ERW, the release required for participation in the ERW did not require waiver of valid pension claims. Dkt. 1. Bowcock claims that Continental intentionally misled him into believing that he would not be able to assert his claim for the allegedly miscalculated pension benefits if he took the ERW. *Id.* Bowcock alleges that this misrepresentation was a breach of Continental's fiduciary duty under ERISA to provide "truthful and complete information in response to his questions about an employee benefit plan." *Id.*

Continental argues that Bowcock's claim arises from the interpretation or application of the CBA and therefore must be arbitrated by the Labor Adjustment Board pursuant to the Railway Labor Act ("RLA"). Accordingly, Continental requests that the court dismiss Bowcock's claim for lack of subject matter jurisdiction.

## II. Legal Standard

A party may challenge the subject matter jurisdiction of a district court pursuant to Federal Rule of Civil Procedure 12(b)(1). The party asserting jurisdiction bears the burden of proving that subject matter jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court may consider any of the following in ruling on a Rule 12(b)(1) motion: (1) the complaint alone;

(2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).

### III.  Analysis

Continental requests that the court dismiss Bowcock's claim because Bowcock's claim is a "minor dispute" under the RLA and thus subject to mandatory arbitration before the system board of adjustment established by Continental and ALPA for resolving minor disputes. Dkt. 9. Bowcock asserts that his claim is an ERISA fiduciary duty claim and that the system board of adjustment is powerless to consider breach of fiduciary duty claims. *Id.* at 6. He also claims that he is not an "employee" under the RLA because he is retired and therefore he is not bound by RLA procedures. *Id.* at 5.

**A.     The Railway Labor Act**

Congress enacted the RLA in 1926 to promote peaceful and efficient resolution of labor disputes in an effort to prevent strikes that could interrupt interstate commerce by bringing the railway transportation system to a halt. *Union Pac. R.R. Co. v. Bhd of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, __ U.S. __, 130 S. Ct. 584, 591 (2009). The original RLA provided for the voluntary resolution of "'grievances arising from the application of collective bargaining agreements to particular situations,'" which are known as "minor disputes." *Id.* (quoting *Union Pacific R.R. Co. v. Price*, 360 U.S. 601, 609, 79 S. Ct. 1351 (1959)). Many railroad companies resisted voluntary arbitration, and by 1934 there was "fear that if no action were taken" by Congress to adopt proposed amendments to the Act "a railroad crisis might take place."[1] *Elgin,*

---

[1] The Supreme Court described the situation in 1934 in *Burley*:

*J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 726, 65 S. Ct. 1282 (1945); *see Bhd. of Locomotive Eng'rs*, 130 S. Ct. at 591. Congress therefore amended the Act in 1934 to require arbitration of minor disputes that cannot be resolved pursuant to the grievance procedures set forth in the parties' collective bargaining agreement. *Bhd. of Locomotive Eng'rs*, 130 S. Ct. at 5901. Pursuant to the 1934 amendments, either party to a minor dispute that cannot be resolved in the "usual manner" may file a petition with the National Railroad Adjustment Board ("NRAB") for arbitration. 45 U.S.C. § 153 (establishing the NRAB to resolve disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions").

"In 1936, Congress extended the [RLA] to cover the then small-but-growing air transportation industry." *Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc.*, 372 U.S. 682, 685, 83 S. Ct. 956 (1963) (citing 49 Stat. 1189, 45 U.S.C. §§ 181-88). These amendments made all of the provisions of the RLA applicable to airlines except for the section establishing the NRAB and its procedures. *Id.* The 1936 amendments require air carriers or their employees to submit minor disputes that cannot be resolved via the grievance procedures set forth in their CBAs to regional adjustment boards, which, in accordance with the 1936 amendments to the RLA, must be established

---

> Prior to 1934 the parties were free at all times to go to court to settle these disputes. Notwithstanding the contrary intent of the 1926 Act, . . . each also had the power, if not the right, to defeat the intended settlement of grievances by declining to join in creating the local boards of adjustment provided for by that Act. They exercised this power to the limit. Deadlock became the common practice, making decision impossible. The result was a complete breakdown in the practical working of the machinery. Grievances accumulated and stagnated until the mass assumed the proportions of a major dispute. Several organizations took strike ballots and thus threatened to interrupt traffic . . . . The old Mediation Board was helpless. To break this log jam, and at the same time to get grievances out of the way of the settling of major disputes through the functioning of the Mediation Board, the Adjustment Board was created and given power to decide them.

*Burley*, 325 U.S. at 725-26, 65 S. Ct. at 1291.

by the air carriers and unions. *Cent. Airlines*, 372 U.S. at 685 (citing 45 U.S.C. § 184); *Int'l Ass'n of Machinists & Aerospace Workers v. Frontier Airlines*, 664 F.2d 538, 540 n.2 (5th Cir. 1981). These regional adjustment boards "have 'exclusive jurisdiction' over minor disputes." *Ruby v. TACA Int'l Airlines, S.A.*, 439 F.2d 1359, 1362 (5th Cir. 1971) (citations omitted).

### B.     Fiduciary Duty Claims

Bowcock claims that Continental breached its fiduciary duty as an administrator of the ERW, an ERISA plan, by not providing him with truthful and complete information about the plan. Dkt. 1. According to Bowcock, this breach of fiduciary duty claim is an ERISA claim and is properly before this court. Continental claims, however, that "claims for benefits under an employer-provided pension plan are precluded by the mandatory arbitration provision of the RLA when the plan is maintained pursuant to a collective bargaining agreement." Dkt. 9 at 5.

If the dispute grows "'out of grievances or out of the interpretation or application of agreements covering rate of pay, rules, or working conditions,'" it is a minor dispute under the RLA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53, 114 S. Ct. 2239 (1994) (quoting 45 U.S.C. § 151a). "The 'distinguishing feature' of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (quoting *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305, 109 S. Ct. 2477 (1989)). A claim that merely references a collective bargaining agreement (as opposed to requiring interpretation of a collective bargaining agreement) is not a minor dispute and thus not precluded from judicial review under the RLA. *Id.* at 351.

Here, Continental asserts that Bowcock's claims "can only be resolved by interpreting the terms of the CBA and the [LOA] that established the ERW." Dkt. 15 at 6. Bowcock concedes, to some extent, that the CBA may need to be "consulted during the lawsuit," but he claims that any

5

defenses requiring consultation of the CBA "would be collateral to Bowcock's claim which is for breach of an independent ERISA statutory duty to tell the truth, not for breach of the plan terms." Dkt. 13 at 7-8.

Bowcock's claim centers around his allegation that Continental did not tell the truth about the terms of the ERW. In order to determine whether Continental's representations to Bowcock were truthful, the court would have to examine and interpret the LOA and the ERW. The court would also have to interpret the ERW to determine damages, as Bowcock requests damages of "approximately $75,000 in early retirement inducement benefits," which he claims he would have received had he participated in the ERW. Dkt. 1 ¶ 22. The LOA and the ERW, together, constitute an agreement between Continental and ALPA that covers "rate of pay, rules, or working conditions" because the LOA provides special incentives (including monetary) for pilots who choose to retire, the ERW incorporates the LOA by reference, and the ERW sets forth all of the rules and procedures for participation in the ERW. *See* Dkt. 9, Exhs. B, C. Additionally, the CBA between Continental and ALPA expressly incorporates the retirement plans that are available to Continental pilots—including the Continental Pilots Retirement Plan, which is the plan covering the pilots who were eligible for the ERW. Dkt. 9, Exhs. A, B. Thus, Bowcock's grievance grows out of the interpretation of an agreement covering "rates of pay, rules, or working conditions" and is, accordingly, a minor dispute that must be resolved by the system board of adjustment.

**C.     Retirement Status**

Bowcock also claims that he is not an employee subject to the RLA's mandatory arbitration provision because he is retired. Dkt. 13. Under the RLA, an "employee" is a "person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work . . . ." 45 U.S.C. § 151. Bowcock argues that, since he is retired,

he "performs no work and is not subject to [Continental's] authority" and that he should therefore not be considered an "employee" under the RLA definition of the term. Dkt. 13 at 4.

Bowcock's argument is contrary to well-established precedent. The U.S. Supreme Court, in *Pennsylvania Railroad Co. v. Day*, considered a claim for additional pay by a retired locomotive engineer. 360 U.S. 548, 79 S. Ct. 1322 (1959). The Supreme Court held that the NRAB had exclusive jurisdiction over the claim. *Id.* at 552. It reasoned that all "the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service." *Id.*

Bowcock acknowledges the holding in *Day*, but he claims that it should not apply to airline retirees. In doing so, he concedes that other courts have applied *Day* to airline employees, but he states that those rulings are wrong. Dkt. 13 at 5 (criticizing *Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 735 F.2d 328 (9th Cir. 1984)). It is, however, entirely appropriate to apply the *Day* holding to airline employees. The *Day* Court determined that the RLA definition of "employee" was broad enough to encompass retired employees. *See Day*, 360 U.S. at 552 (quoting the statute). That same definition of "employee" applies to both airline and railroad employees. *See Cent. Airlines, Inc.*, 372 U.S. at 685 (noting that the "1936 amendments made applicable to the airlines all of the provisions of the Railway Labor Act, excepting § 3, 45 U.S.C. § 153, dealing with the [NRAB]; but including § 1, 45 U.S.C. § 151, containing definitions"); *Alaska Airlines, Inc.*, 735 F.2d 3at 328-29 (applying the *Day* holding to a retired airline employee). Thus, retired employees whose claims arose while they were "in the service of a carrier" (45 U.S.C. § 151)—whether it was an air carrier or a rail carrier—must arbitrate the claims pursuant to the requirements of the RLA. Bowcock's

7

claim that Continental misled him about the ERW arose while he was still "in the service of a carrier." 45 U.S.C. § 151. Accordingly, Bowcock, though retired, is considered an "employee" under the RLA and must bring his claim through the system board of adjustment.

## IV. Conclusion

Bowcock's claim against Continental, which arose while Bowcock was a Continental employee, is a "minor dispute" under the RLA and is therefore within the exclusive jurisdiction of the adjustment board. This court does not have subject matter jurisdiction. Accordingly, Continental's motion to dismiss for lack of subject matter is GRANTED, and Bowcock's claim is DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on November 19, 2010.

_____
Gray H. Miller
United States District Judge